■ In the Matter of GERMANTOWN CENTRAL SCHOOL DISTRICT, Appellant, v PUBLIC EMPLOYMENT RELATIONS BOARD OF THE STATE OF NEW YORK et al., Respondents. [613 NYS2d 957] — Weiss, J. Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in Albany County) to review a determination of respondent Public Employment Relations Board which found that petitioner had committed an improper employer practice.

Annual deficits in their school lunch program motivated the School Board members of petitioner to obtain a technical review of its cafeteria operation by the State Education Department's Bureau of Food Management and Nutrition. In February 1989, the Education Department report and recommendations for cost savings and increased pupil utilization were reviewed by the cafeteria committee and the cook-manager, Elaine Banks, a member of the Administrative Supervisory Association (hereinafter ASA), her collective bargaining organization, and elementary school principal John Smith, who was also the designated spokesperson for ASA at the school. When Banks indicated that she was unable to implement the recommendations and make the cafeteria self-sustaining, petitioner explored the possibility of using an independent contractor to operate the cafeteria and in early April 1989 met with Quality Food Management (hereinafter QFM), which made suggestions and proposals.

On June 7, 1989 district voters rejected the proposed budget for the school year 1989-1990, which included an item of $60,000 to pay the existing food program deficit and defray the anticipated future deficit. On June 21, 1989 the School Board voted to solicit bids for "outside food services" for a breakfast and lunch program for the ensuing school year. QFM was the sole bidder, and on July 18, 1989 a contract was signed with QFM. The budget was defeated by voters again on August 9, 1989 and at a regular meeting of the Board of Education that evening, the outside food services contract was confirmed. Banks, who filed for unemployment insurance benefits on July 10, 1989, was interviewed by QFM and on July 19, 1989 declined an offer of employment as director of its district food service operation. The voters once again rejected a special budget proposition on September 6, 1989 which included the third defeat of funds requested for the cafeteria program and to pay the accumulated deficit. For the 1989-1990 school year, petitioner operated on a contingency budget and was statutorily precluded from operating a cafeteria program which was not totally self-sustaining (see, Education Law § 1709 [22]; § 1718 [1]; § 2023).

On October 18, 1989, an improper practice charge made by ASA and Smith was filed with respondent Public Employment Relations Board (hereinafter PERB) charging petitioner with a violation of the Taylor Law (Civil Service Law § 209-a [1] [d]) for "failure to negotiate the sub-contracting of unit member Banks' position to private firm".[1] Petitioner denied the charge and asserted as an affirmative defense that the budgetary defeat abolished, by statutory mandate, its subsidized cafeteria program for the 1989-1990 school year. Following hearings, PERB's Assistant Director sustained the charge and ordered that the QFM contract be discontinued and that Banks be reinstated with back pay and full benefits. PERB sustained petitioner's exceptions based upon the failure of the Assistant Director to effect a complete factual record and ordered remand. Following an evidentiary hearing, a second decision was made which granted identical relief. Petitioner again filed exceptions to the decision and after oral argument PERB adopted the Assistant Director's determination, giving rise to this CPLR article 78 proceeding which was transferred to this Court upon stipulation of the parties.

We agree with petitioner's argument that it was statutorily

1. ASA amended the charge on November 3, 1989 to allege that the work in issue was performed exclusively by unit member Elaine Banks.

precluded from operating the cafeteria for the 1989-1990 school year because it was operating only under an austerity contingency budget *(see,* Education Law § 1709 [22]; § 1718 [1]). Petitioner did not have power to levy taxes to sustain the deficit program *(see,* Education Law § 2023). While PERB now responds that the statutes mandate only that subsidization through budgetary appropriation is proscribed and that alternatives thereto exist,[2] its determination being reviewed concluded otherwise. Nevertheless, PERB contends that a violation of Civil Service Law § 209-a (1) (d) occurred based upon a failure to negotiate the issue.

It has been long established that subcontracting services that merely substitute private employees for public employees resulting in the same work being performed in the same place is an executive decision which implicates the terms and conditions of employment and is therefore a mandatory subject for negotiations *(Matter of City of Poughkeepsie v Newman,* 95 AD2d 101, 103, *appeal dismissed* 60 NY2d 859, *lv denied* 62 NY2d 602; *Matter of Saratoga Springs City School Dist. [New York State Pub. Empl. Relations Bd.],* 68 AD2d 202, 209, *lv denied* 47 NY2d 711). It is the impact of a public employer's decision on the terms and conditions of public employment which forms the basis for the requirement to negotiate the issue of contracting out.

Here, however, the termination of the school lunch program was not the result of acts or decisions, unilateral or otherwise, on the part of petitioner. Petitioner had in good faith passed and submitted to the voters for approval a budget which provided funding for the program. The termination occurred by operation of law and public policy, as the result of the voter defeat of the school budget and the requirements of a contingency budget (Education Law § 1709 [22]; § 2023). The budget defeat was an outside act beyond the control of petitioner and the ASA. As a result, the lunch program, and with it the job lost by an ASA member, could not be restored through collective bargaining regardless of any concessions

---

**2.** While PERB speculates on appeal that petitioner could have sufficiently reduced expenses and/or increased prices to have eliminated continued subsidization of the lunch program, the record contains no such evidence. Contrary thereto, the record contains evidence demonstrating the impossibility of achieving a self-sustaining level by those methods. The decision of the Assistant Director adopted by PERB concluded that petitioner's assertion that it was statutorily precluded from continued operation of the program was supported by law *(see,* 7 Ed Dept Rep 153-157 [Formal Opns of Counsel No. 213]).

made by petitioner and ASA. Similarly, there was, as a matter of law, *no impact,* much less a "primary impact", on the terms and conditions of the employment of the ASA unit member by the decision to subcontract the otherwise lost lunch program *(cf., Matter of Saratoga Springs City School Dist. [New York State Pub. Empl. Relations Bd.],* 68 AD2d 202, 209, *supra).*

Accordingly, we hold that there was no violation of the Taylor Law (Civil Service Law § 209-a [1] [d]) resulting from petitioner's failure to negotiate the issue. The absurdity of PERB's decision is reflected in the relief granted which orders, *inter alia,* payment to Banks of the very same lost pay and benefits which petitioner had been statutorily precluded from paying during the school year in question.

Cardona, P. J., Mikoll, Mercure and Casey, JJ., concur. Adjudged that the determination is annulled, with costs, and petition granted.